Petition for Reinstatement
from Inactive Status.

No. 139 DB 2004.

Supreme Court of Pennsylvania.

April 19, 2005.

*ORDER*

PER CURIAM.

AND NOW, this 19th day of April, 2005, the Report and Recommendations of the Disciplinary Board dated March 21, 2005, are approved and IT IS ORDERED that PATRICE A. ICARDI, who has been on inactive status, has never been suspended or disbarred, and has demonstrated that she has the moral qualifications, competency and learning in law required for admission to practice in the Commonwealth, shall be and is, hereby reinstated to active status as a member of the Bar of this Commonwealth. The expenses incurred by the Board in the investigation and processing of the Petition for Reinstatement shall be paid by the Petitioner.

■

CITIZENS BANK OF PENNSYL-
VANIA, a Pennsylvania Cor-
poration, Appellee,

v.

Christy L. MYERS, an individual, Christopher P. Fekos, an individual, Deborah Fekos, an individual, Lee Mazur, Jr., an individual, Erin Mazur, an individual, Joseph Howcroft, an individual, Mazur's LLC, a Pennsylvania Liability Corporation, America Painting Services, Inc., a Pennsylvania Corporation, and Fekos' Famous Eateries, Inc., a Pennsylvania Corporation.

Appeal of: Christopher P. Fekos and
Joseph Howcroft, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 27, 2004.

Filed March 24, 2005.

Kevin C. Abbott, Intervenor, Pittsburgh, for PG Publishing.

Matthew F. Burger, Pittsburgh, for Citizens Bank.

Brian Kuhn, Pittsburgh, for Feko's Famous Eateries.

BEFORE: BENDER, PANELLA, and POPOVICH, JJ.

OPINION BY PANELLA, J.:

¶1 Appellants, Christopher P. Fekos and Joseph Howcroft, appeal from the orders entered on December 24, 2003, by the Honorable Martin J. O'Brien,[1] Court of Common Pleas of Allegheny County, which denied their respective motions to dismiss the preliminary injunction obtained by the Appellee, Citizens Bank of Pennsylvania.[2] After careful review, we affirm.

¶2 On December 9, 2003, Citizens commenced a civil action against several defendants, including Fekos and Howcroft. In its complaint, Citizens alleged that one of its employees, Christy Myers, a Retail Sales and Service Representative employed in its Penn Hills, Pennsylvania branch office, conspired with the named defendants for the purpose of misappropriating funds from Citizens' customer accounts. Citizens' complaint further alleged that it had uncovered more than $1,300,000.00 stolen by the defendants in furtherance of their conspiracy. Citizens sought, *inter alia*, equitable relief, in the form of an injunction to freeze the defendants' bank accounts.

¶3 Citizens also filed on December 9, 2003, an emergency *ex parte* motion for a special injunction seeking to freeze the bank accounts of the defendants named in the complaint. The trial court granted Citizens' motion, which resulted in the freeze of approximately $674,000.00 in an account held at National City Bank.[3] The trial court scheduled a hearing on the continuation of the injunction for December 15, 2003. A hearing was held on December 19, 2003, at which time Fekos and Howcroft made two oral motions to dismiss the injunction. In the first motion, Fekos and Howcroft argued that the court lacked subject matter jurisdiction[4] as they contended that Citizens' complaint was filed at law and not in equity.[5] In the

1. The Administrative Office of Pennsylvania Courts specially assigned this case to Judge O'Brien, a member of the bench of the Court of Common Pleas of Butler County. The Honorable Robert C. Gallo, Court of Common Pleas of Allegheny County, voluntarily recused himself from participating in this case on December 16, 2003.

2. This Court consolidated these appeals on January 8, 2004, ordering that they be briefed and argued as a single appeal.

3. Judge Robert C. Gallo presided over the motion.

4. Appellants note in their reply brief that their motion "should have been labeled ... a motion to vacate the injunction because of the lack of equity jurisdiction" rather than a motion to dismiss for lack of subject matter jurisdiction. Appellants' Reply Brief, at 3. There is, however, no such thing as "equity jurisdiction." Our Supreme Court explained this misconception in *School District of Borough of West Homestead v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A.2d 904 (1970), as follows:

Preliminarily we should repeat that there is technically no such thing as 'equity jurisdiction', even though that phrase has been loosely used in opinions of this Court in the past. We have no separate court of equity; the Court of Common Pleas provides both legal and equitable remedies. For administrative purposes, there may be two 'sides' to the Court, but they are both part of the same Court. ... No question of 'jurisdiction' is involved. 'Equity' and 'law' are merely forms of action, which are used in the same Common Pleas Court.

*Id.*, at 117, 269 A.2d at 907. An examination of the transcript of the hearing and Appellants' brief reveals that they are in fact arguing that there is a misjoinder in the complaint of an equitable cause of action with the legal causes of action.

5. We note that we are aware that the Pennsylvania Rules of Civil Procedure were amended to abolish the separate action in equity. The separate action in equity was rescinded on December 16, 2003. *See* Supreme Court Order, 12/16/03, No. 42 Docket No. 5 (In re: Consolidation of the Action in Equity with the Civil Action). The merging of the *action in*

second motion, Fekos and Howcroft argued that there was an adequate remedy at law and, as such, the grant of a preliminary injunction was improper.

¶ 4 The trial court decided to forego ruling on the motions until after Citizens had an adequate opportunity to research the issues and file a written response to the motions. The trial court also decided to permit the hearing to move forward and hear testimony from Citizens' witnesses. Fekos and Howcroft then stated that they would stipulate to Citizens' offers of proof of its witnesses' testimony for the purpose of the trial court's resolution of their motions to dismiss, thus dispensing of the need for witness testimony.

¶ 5 Counsel for Citizens stated that Matt Clydesdale, an investigator for Citizens, would have testified that he had interviewed Christy Myers on two occasions at which time she described how she misappropriated funds from Citizens' customer accounts to benefit the named defendants who were purchasing restaurants in Florida. Specifically, it was offered that Christy Myers would have testified that she advanced funds from the Citizens customer accounts, without the customers' knowledge, for the support of the restaurant acquisitions until funding of a loan could be secured from another source, which would then be used to repay the Citizens customer accounts. It was also noted that Christy Myers would confirm that Fekos was aware of the embezzlement of the customer bank accounts and that Howcroft had picked up misappropriated funds, in the forms of cash and checks, at the bank.

¶ 6 Counsel for Citizens also made an offer of proof as to the testimony of Jean Yates, Vice–President and Senior Audits Manager for Citizens. It was explained

that Jean Yates would have testified how the funds came into the bank, which customers had the funds, how the funds left the customers' respective accounts, and the location where the funds were deposited after they left the owners' accounts. Furthermore, Jean Yates would have testified that she traced approximately $674,000.00 in misappropriated funds to the frozen account at National City Bank, an account which is maintained by Howcroft and which provides Fekos with signing authority and power of attorney. Jean Yates would have also noted that money diverted from the customer accounts went to the benefit of a number of the defendants.

¶ 7 The trial court denied the motions to dismiss the injunction on December 22, 2003, the same day Citizens filed its written responses to the oral motions. This timely appeal followed. On appeal, Appellants raise the following issues:

A. WHETHER THE COURT SHOULD HAVE GRANTED A PRELIMINARY INJUNCTION WHEN THE CASE WAS FILED AT LAW.

* * *

B. WHETHER THE COURT SHOULD HAVE GRANTED A PRELIMINARY INJUNCTION WHEN THE ONLY ISSUE WAS MONEY AND THERE WAS A COMPLETE AND ADEQUATE NON–STATUTORY REMEDY AT LAW.

* * *

C. WHETHER THE COURT SHOULD HAVE IMPOSED A

equity into the civil action, however, is not applicable to the present case as the amendment did not take effect until July 1, 2004. *Id.*

FREEZE ON A BANK ACCOUNT WHICH WAS ALLEGED TO INCLUDE THE STOLEN FUNDS FROM WHICH [CITIZENS] HAD BEEN DEFRAUDED WHEN THE ALLEGATIONS DID NOT ALLEGE THAT THE ACCOUNT CONSISTED OF ONLY SUCH FUNDS.

\* \* \*

D. WHETHER THIS COURT MAY CONDUCT AN ADEQUATE REVIEW WITHOUT AN ARTICULATION OF THE REASONS FOR THE GRANT OF THE INJUNCTION.

\* \* \*

Appellants' Brief, at 4.

 ¶ 8 While this appeal was pending, Fekos filed a suggestion of Bankruptcy on December 22, 2004. Therefore, we must determine what effect, if any, the suggestion of bankruptcy has on this appeal.[6] Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a petition in bankruptcy operates as a stay, applicable to all entities, of the following:

(1) the commencement or continuation, including the issuance or employment of process, of *a judicial*, administrative, or other action or *proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code.]

11 U.S.C. § 362(a)(1) (emphasis added). Section 362's stay is " 'automatic' because

it is triggered as against all entities upon the filing of a bankruptcy petition, irrespective of whether the parties to the proceeding stayed are aware that a petition has been filed." *Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1992). The automatic stay is designed to give the debtor "a breathing spell from his creditors." *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir.1994) (quoting *Teachers Insurance & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64 (2d Cir.1986)) (internal quotation marks omitted). The automatic stay precludes any non-bankruptcy court, including state and federal courts, from continuing judicial proceedings pending against the debtor. *See United Jersey Bank*, 959 F.2d at 1206.

 ¶ 9 Whether a specific judicial proceeding, *e.g.*, an appeal, comes within the purview of the automatic stay provision of § 362 is determined by looking at the proceeding "at its inception." *Id.*, at 1204 (citation omitted). Accordingly, the key determination is whether a proceeding was *"originally brought* against the debtor." *Id.* (citation omitted and emphasis in original). If an action was originally brought against a debtor, an appeal *initiated by the debtor* must be stayed as such an appeal comes within the scope of § 362. *See, e.g., Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir.1982) ("[S]ection 362 should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee."); *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1037 (3d Cir.1991) (applying *St. Croix Hotel Corp.* and staying appeal initiated by debtor); *Butler*, 803 F.2d at 64–65

---

**6.** We note that none of the parties to this appeal filed any supplemental filings addressing this issue.

(concluding that appeal initiated by the debtor comes within scope of § 362's automatic stay provision where original action was brought against the debtor).

¶ 10 Applying the foregoing case law leads to the conclusion that Fekos' appeal must be stayed. Citizens brought the case *sub judice* against Fekos. *See* Complaint, 12/15/03, at Counts II–IV, VI–IX. Subsequent to the filing of the complaint, and while this appeal was pending, Fekos, as mentioned, filed a suggestion of bankruptcy. *See* Suggestion of Bankruptcy, 12/22/04. Therefore, as the action was originally brought against Fekos, the appeal initiated by him comes within the purview of § 362 and must be stayed. *See, e.g., St. Croix Hotel Corp.*, 682 F.2d at 449 ("In our view, section 362 should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee.").

¶ 11 We note that Howcroft's appeal is unaffected by our ruling on Fekos' appeal and we may proceed to address the merits of the issues Howcroft raises on appeal. *See United Jersey Bank*, 959 F.2d at 1205 ("[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."); *Queenie, Ltd. v. Nygard International*, 321 F.3d 282, 287 (2d Cir.2003) ("[A] suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing.") (citation omitted).

¶ 12 The preliminary injunction in the case *sub judice* acts to freeze Howcroft's National City Bank account, thus prohibiting him, or anyone else, from withdrawing money from the account. Our standard of review where the trial court has granted a prohibitory preliminary injunction is well-settled: we review the trial court's order for an abuse of discretion.

*See Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 645, 828 A.2d 995, 1000 (2003). Our scope of review is *plenary*. *See Warehime v. Warehime*, —— Pa. ——, ——, 860 A.2d 41, 46 n. 7 (2004). This Court does not question the merits of the controversy; we only examine the record to ascertain whether the trial court had any apparently reasonable grounds for its decision to grant the preliminary injunction. *See Summit Towne Centre, Inc.*, 573 Pa. at 645, 828 A.2d at 1000. "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id.*, 573 Pa. at 645–646, 828 A.2d at 1000 (citation omitted and brackets in original).

¶ 13 Prior to obtaining injunctive relief, a party must show the following elements: (1) that a preliminary injunction is needed to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) that more harm would result from not granting the injunction than from granting it and that the injunction will not harm other interested parties in the proceedings; (3) that the injunction will restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; (5) that the injunction is designed to abate the offending activity; and (6) that the preliminary injunction will not negatively affect the public interest. *See Warehime*, —— Pa. at ——, 860 A.2d at 46–47 (citation omitted).

¶ 14 With the above principles in mind, we will now address Howcroft's issues on

appeal. Howcroft first argues that the trial court erred by granting the preliminary injunction as he contends Citizens' complaint was filed at law and not in equity, and thus, the trial court was without jurisdiction to grant an injunction. *See* Appellants' Brief, at 9–11. As noted, however, this is not an issue of jurisdiction, but of joinder.

¶ 15 Misjoinder of a cause of action must be raised by preliminary objection, *see* Pa.R.C.P., Rule 1028(a)(5), 42 Pa.Cons.Stat.Ann., and if it is not raised it is waived. *See* Pa.R.C.P., Rule 1032(a), 42 Pa.Cons.Stat.Ann. Howcroft filed preliminary objections to the complaint, as well as amended preliminary objections, but never raised an objection concerning the joinder of an equitable cause of action, i.e., the request for injunctive relief, with the legal causes of action. As such, we find Howcroft's argument waived. Even if Howcroft had raised an objection to the joinder of an equitable cause of action his argument would have had no merit.

¶ 16 While it is true that the Pennsylvania Rules of Civil Procedure provide no authority for the joinder of an action at law with an action at equity, *see*, *e.g.*, *Lustig v. Lustig*, 438 Pa.Super. 320, 652 A.2d 393, 395 (1995) (citing *D'Allessandro v. Wassel*, 526 Pa. 534, 587 A.2d 724 (1991)), our case law has recognized instances in which such joinder will be permitted. For instance, "to avoid piecemeal litigation and to afford complete relief equitable and legal causes of action may be joined where ... damages are sought for injuries caused by defendant's actions that are subject to equitable relief." 3 Standard Pennsylvania Practice § 17:9 (2002) (citing, *inter alia*, *Fountain Hill Underwear Mills v. Amalgamated Clothing Workers' Union of America*, 393 Pa. 385, 143 A.2d 354 (1958)).

¶ 17 In the case *sub judice*, an examination of Citizens' complaint reveals that while equitable relief in the form of an injunction and unjust enrichment are sought, *see* Complaint, 12/15/03, at Counts VII and IX, the other legal causes of action [7] in the complaint seek damages arising from the defendants' actions that are the subject of the equitable relief. *See, e.g.*, Requested Relief, at p. 20. Therefore, Citizens' complaint properly joins an equitable cause of action with the legal causes of action, *see* 3 Standard Pennsylvania Practice § 17:9 (2002) (and cases cited therein), as such, Howcroft's argument fails.

¶ 18 Howcroft next argues that the trial court erred in granting a preliminary injunction as there was a complete and adequate remedy at law,[8] i.e., a suit for money damages.[9] *See* Appellants'

---

7. The legal causes of action in the complaint are breach of fiduciary duty (Count I), aiding and abetting a breach of fiduciary duty (Count II), conversion (Count III), fraud (Count IV), breach of contract (Count V), civil conspiracy (Count VI), and tortuous interference with existing contractual relationships (Count VIII).

8. This argument must be raised by preliminary objection or it is waived. *See* Pa.R.C.P., Rule 1509(c), 42 Pa.Cons.Stat.Ann. Howcroft did not raise this objection in his preliminary objections filed on January 16, 2004, but on April 1, 2004, filed a motion to amend his preliminary objections to include this objection. On April 14, 2004, Citizens filed their consent to Howcroft's motion to amend. Thus, pursuant to Pa.R.C.P., Rule 1033, 42 Pa.Cons.Stat.Ann., Howcroft's preliminary objections have been amended to include the objection that there is a full, complete and adequate non-statutory remedy at law. Thus, this claim has been properly preserved.

9. Howcroft also argues, albeit in two sentences, that the trial court erred in granting the preliminary injunction as Citizens did not show a likelihood of success on the merits. *See* Appellants' Brief, at 12. In addition,

Brief, at 12. The proposed testimony Howcroft stipulated to demonstrates that his argument is untenable.

¶ 19 Preliminarily, we note that this Court has affirmed the grants of preliminary injunctions to enjoin the dissipation of funds. *See American Express Travel Related Services Company, Inc. v. Laughlin*, 424 Pa.Super. 622, 623 A.2d 854, 856–857 (1993) (affirming preliminary injunction entered to enjoin the concealing or dissipation of funds), *appeal denied* 535 Pa. 644, 633 A.2d 149 (1993); *East Hills TV & Sporting v. Dibert*, 366 Pa.Super. 455, 531 A.2d 507, 509 (1987) (seller may be enjoined from using funds in seller's bank so as to prevent potential loss of funds belonging to buyer and necessary to carry on its business). *Cf. Walter v. Stacy*, 837 A.2d 1205, 1210 (Pa.Super.2003) (noting that preliminary injunction requiring placement of funds into escrow and requiring court approval before utilizing the funds to prevent the "unfair, wholesale dissolution of their assets in anticipation of civil liability" was "proper," but vacating and remanding case for imposition of a bond).

¶ 20 The proposed testimony in the case *sub judice* established that the funds were misappropriated because Howcroft and the other defendants did not have enough money to purchase the restaurants without resorting to illegal activity. There is no evidence in the record that Howcroft or the other defendants have any assets with which they could pay a money judgment obtained by Citizens with respect to the converted accounts. The record consists solely of testimony that Howcroft maintains an account which consists of assets stolen from Citizens' customer accounts. Since the undisputed record demonstrates that the account's assets had their genesis in theft, there is a reasonable likelihood that absent an injunction, the assets will simply disappear or be dissipated.

¶ 21 Under the foregoing circumstances, we find that Citizens has established irreparable harm that cannot be compensated by money damages and, as such, Howcroft's argument has no merit.

¶ 22 Howcroft next argues that the trial court erred in freezing the National City Bank account as Citizens never alleged that the account's funds were composed entirely of money allegedly diverted from accounts at Citizens. *See* Appellants' Brief, at 13–14. Howcroft, however, never made this argument to the trial court in support of his motion to dismiss. Therefore, we find that this claim is waived. *See* Pa.R.A.P., Rule 302(a), 42 Pa.Con.Stat. Ann. ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). *Cf. Federal Trade Commission v. Atlantex Associates*, 872 F.2d 966, 970–971 (11th Cir.1989) (rejecting challenge to scope of asset freeze because appellants had not asked the district court to revise the freeze). Even if Howcroft had properly preserved this issue for our review, we find it meritless as Citizens

Howcroft argues, in a single sentence, that the preliminary injunction should not have been granted "as not all of the required factors have been shown." *Id*. We decline to consider these arguments as they are not contemplated within Howcroft's second issue on appeal. *See Graziani v. Randolph*, 856 A.2d 1212, 1216 (Pa.Super.2004) (declining to consider argument that deviated from question presented). Moreover, Howcroft's arguments on these points, which total a scant three sentences, are not adequately developed as they are mere assertions of error. *See Connor v. Crozer Keystone Health System*, 832 A.2d 1112, 1118 (Pa.Super.2003) (holding arguments not appropriately developed in brief are waived); *Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1381 (1995) (failure to elaborate on mere assertion in argument section of brief results in waiver of claim).

established that all of the assets in the National City Bank account came from Citizens' customer accounts.

¶ 23 Howcroft notes in his brief that the frozen account contains approximately $674,451.64, *see* Appellants' Brief, at 14. Interestingly, he stipulated to the following proposed testimony, which established that approximately $674,000 was traced into the frozen account:

> **Mr. Burger:** Ms. Yates would also testify that **she is able to track the money misappropriated from customer accounts into the National City account which remains frozen to this day.** This is what we understand Ms. Yates would testify to.

> \* \* \*

> Ms. Yates would testify regarding documents produced by National City that **the amounts are approximately in excess of $674,000[.00] dollars**, and that **the account is maintained by Joseph Howcroft** with signing authority and power of attorney in favor of Mr. Fekos, and that **we are able to establish the trail of that money from specific Citizens' customer accounts into a National City account**, and then on the day that Ms. Myers was taken out of the bank, which was approximately December 2nd, **that the next day the money was taken from the National City account and placed in a Brentwood Bank account**, and then on the day Ms. Myers offered additional testimony **on December 9th, the money was taken from the Brentwood Bank account and taken back to the National City account** based on the testimony presented to the Court.

> Ms. Yates would also testify that **she is able to track the specific dollars from specific customer accounts directly from Citizens Bank, and those**

> **customer accounts into that National City account.**

N.T., 12/19/03, Hearing, at 53–54 (emphasis added). Thus, based on this proposed testimony, which, as noted, Howcroft stipulated to, Citizens established that the frozen account was composed entirely of funds pilfered from Citizens' customer bank accounts and that the approximate value of the frozen account was $674,000.00. In light of this testimony, Howcroft's argument has no merit.

¶ 24 Howcroft's final argument is that this Court cannot conduct an adequate review of the grant of the preliminary injunction without a Rule 1925(a) opinion, *see* Pa.R.A.P., Rule 1925(a), 42 Pa.Cons.Stat.Ann., from the trial court. *See* Appellants' Brief, at 14–15. Howcroft's argument is without merit.

¶ 25 As noted, our standard of review mandates that we "**examine the record** to determine if there were any apparently reasonable grounds for the action of the court below." *Warehime v. Warehime,* —— Pa. ——, ——, 860 A.2d 41, 46 (2004) (emphasis added and citation omitted); *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount Inc.,* 573 Pa. 637, 645, 828 A.2d 995, 1000 (2003). In the case *sub judice,* the proposed testimony offered by Citizens amply illustrates that there were apparently reasonable grounds for the trial court's decision to grant a preliminary injunction. As such, we need not remand this matter for the trial court's preparation of a Rule 1925(a) opinion.

¶ 26 Orders affirmed at No. 16 WDA 2004; appeal at No. 15 WDA 2004 stayed.