**Eagle Nat'l Bank v. ISCP Funding, Inc.**

*Eric E. Reed,* for plaintiff.
*Bret M. Binder,* for defendant.

BERNSTEIN, *J.,* May 3, 2011—The petition for special and/or preliminary injunction filed by plaintiffs Eagle National Bank and Eagle Nationwide Mortgage Company requires this court to determine whether defendant ISCP

Funding, LLC should be enjoined from using funds which were transferred to ISCP Funding LLC pursuant to an asset purchase agreement executed by the parties. For the reasons below, ISCP Funding LLC is enjoined from using the disputed funds pending resolution of the dispute.

## Background

Plaintiff Eagle National Bank ("Eagle Bank,") is a national banking association based in Upper Darby, Pennsylvania. Plaintiff Eagle Nationwide Mortgage Company ("Eagle Mortgage,") is a corporation based in Chadds Ford, Pennsylvania. Defendant, ISCP Funding LLC ("ISCP,") is a limited liability company with an address at 2929 Arch Street, Philadelphia, Pennsylvania.

Until 2010, Eagle Mortgage was in the mortgage-lending business and operated through a number of affiliated branch offices. Each branch office generated proceeds from the mortgage business and transferred all the proceeds to Eagle Mortgage as the parent company. Eagle Mortgage received the funds, recorded receipt in specific ledger entries, and held the proceeds in a general reserve account. Eagle Mortgage held the funds in reserve to pay all costs and expenses incurred by each branch office in the course of a business period. Once the costs and expenses were paid, Eagle Mortgage released any remaining funds to each branch office in an amount commensurate with the business generated therefrom.

On August 5, 2010, Eagle Bank and Eagle Mortgage sold their business assets to ISCP pursuant to an Asset Purchase agreement (the "agreement.") The agreement

stated:

Section 2.1 Sale and Transfer of Assets. The Sellers [Eagle Bank and Eagle Mortgage] hereby agree to sell...all of the personal, tangible, intangible ... rights and assets used in the operation of...the Business ... (the 'Assets.') The Assets shall include:

\* \* \*

(g) all...deposits (including branch accounts relating to operating expenses and reserves...)[1]

Section 2.3 assumption of Liabilities ... the purchaser shall assume, effective as of closing, the following liabilities of the sellers (collectively, the "assumed liabilities"):

(d) ... all of [Eagle Mortgage's] ordinary and customary operating expenses incurred in connection with operation of the branch offices relating to business after the closing (as well as prior to the closing, but only to the extent of the aggregate dollar amount contained in the branch accounts expressly described in section 2.1(g) above at closing).[2]

Section 2.3(A)

Excluded Liabilities. No Purchaser shall assume or be liable for any Excluded Liabilities. Each Seller shall

1. Asset purchase agreement, Exhibit B to plaintiff's petition for special and/or preliminary injunction, sections 2.1, 2.1(g).
2. Asset purchase agreement, Exhibit B to plaintiff's petition for special and/or preliminary injunction, sections 2.3, 2.3(d).

timely perform, satisfy and discharge ... all Excluded Liabilities of such Seller. "Excluded Liabilities" shall mean all liabilities of a Seller, other than the assumed liabilities, including:

\*\*\*

(k) any amounts due to any Affiliate of a seller, including any amounts owed to any branch office or any employee thereof, in respect of the period prior to the closing.[3]

Upon execution of the agreement, Eagle Bank and Eagle Mortgage transferred their assets to ISCP, including the reserve deposits held for the benefit of the branch offices. At the time the parties executed this agreement, a number of branches declined affiliation with ISCP, and asked Eagle Mortgage to release any funds held in the reserve deposits, after payment of any costs and expenses. Plaintiffs forwarded the request to release the funds to the new owner of the reserve deposits, ISCP.[4]

On March 7, 2011, ISCP sent a letter to Eagle Bank and Eagle Mortgage in reply to their demand for the release of funds. The letter denied that ISCP had any obligation to release any deposits held in reserve. Specifically, the letter stated that ISCP had no obligations to release the funds pursuant to section 2.3(A)(k) of the agreement which

---

3. Asset Purchase Management. Exhibit B to plaintiff's petition for special and/or preliminary injunction. section 2.3(A) (emphasis supplied).

4. Letter dated March 4, 2001, from Eagle Bank and Eagle Mortgage to ISCP, Exhibit D to plaintiff's petition for special and/or preliminary injunction.

excluded from the liabilities of ISCP --

> Any amounts due to any affiliate of seller [Eagle Bank and Eagle Mortgage,] including any amounts owed to any branch office or any employee thereof, in respect of the period prior to closing.[5]

On March 10, 2011, Eagle Bank and Eagle Mortgage filed suit against ISCP. The complaint asserts the claims of Breach of Contract, Constructive Trust, and a request for Accounting. The following day, March 11, 2011, Eagle Bank and Eagle Mortgage filed the instant petition for special and/or injunctive relief. On March 22, 2011, ISCP filed a response in opposition to plaintiff's petition for special and/or injunctive relief. The following day, March 23, 2011, this court held a hearing on the matter presented by the petition. During the hearing, testimony was offered which revealed that ISCP is experiencing financial constraints caused by a downturn in the mortgage business.

## Discussion

In the petition for special and/or preliminary injunction, Eagle Bank and Eagle Mortgage assert that ISCP is experiencing financial constraints which could conceivably compel ISCP to use or dissipate the disputed funds.[6] Eagle Bank and Eagle Mortgage conclude that they would suffer irreparable harm if ISCP were allowed to use the reserve

---

5. Letter from ISCP to Eagle Bank, Exhibit C to plaintiff's petition for special and/or preliminary injunction (citing section 2.3(A)(k) of the Asset Purchase agreement).

6. Plaintiffs' petition for special and/or injunctive relief, ¶ 30.

funds. Opposing the petition, ISCP argues that plaintiffs' right to injunctive relief "is extremely doubtful" because granting the petition would "upset the status quo by re-writing the terms of the asset purchase agreement."[7]

To obtain a preliminary injunction, a petitioner must establish that:

(1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages;

(2) greater injury will occur from refusing to grant the injunction than from granting it;

(3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct;

(4) the petitioner is likely to prevail on the merits;

(5) the injunction is reasonably suited to abate the offending activity; and

(6) the public interest will not be harmed if the injunction is granted.[8]

I. *Plaintiffs have established the element of immediate and irreparable harm.*

In Pennsylvania, a preliminary injunction may be granted to enjoin the dissipation of funds.[9] In *Citizens Bank of Pennsylvania v. Myers*, 872 A. 2d 827 (Pa. Super.

---

7. Defendant's Memorandum of Law in Support of its Response in Opposition to the petition for special and/or injunctive relief, p. 4.

8. *Brayman Constr. Corp. v. DOT*, 13 A.3d 925, 935 (Pa. 2011).

9. *Citizens Bank v. Myers*, 872, A.2d 827, 836 (Pa. Super. 2005).

2005), plaintiff filed a complaint asserting that defendants had embezzled funds together with a petition for injunctive relief seeking to prevent defendants from dissipating such funds. The trial court granted the injunction and issued an order freezing the funds. A subsequent hearing was held to determine whether the injunction should be continued. At the hearing, counsel for defendants stipulated to offers-of-proof which disclosed that defendants had indeed embezzled the funds. The injunction freezing the funds was preserved. Defendants appealed. Defendants stated that injunctive relief had been improperly granted because plaintiff had an adequate remedy at law under a breach-of-contract theory. Affirming the trial court's order, the Superior court noted that there was a "reasonable likelihood that absent an injunction, the assets will simply disappear or be dissipated."[10] The Superior Court "affirmed the grants of preliminary injunctions to enjoin the dissipation of funds."[11]

In this case, testimony offered at the hearing by Steve Rickle, on behalf of ISCP, disclosed that ISCP is experiencing financial constraints, has been compelled to reduce its workforce to meet financial obligations, and has insufficient unencumbered funds to meet obligations to the branch offices formerly affiliated with Eagle Bank and Eagle Mortgage. Based on the foregoing and on ISCP's claim of ownership of the funds, this court finds a reasonable likelihood that the reserve deposits could be dissipated absent an injunction. Eagle Bank and Eagle

---

10. *Citizens Bank v. Myers*, 872, A.2d at 836 (Pa. Super. 2005).
11. *Citizens Bank v. Myers*, 872, A.2d at 836 (Pa. Super. 2005).

Mortgage have established the first element necessary to obtain an injunction.

## II. *Greater injury would result from refusing to grant the injunction.*

Under the terms of the asset purchase agreement, ISCP is required to assume certain liabilities of Eagle Bank and Eagle Mortgage. The liabilities to be assumed include all of Eagle Mortgage's ordinary and customary operating expenses incurred in connection with operation of the branch offices.[12] Refusing to grant the injunction in this case would result in greater injury because it would violate provisions of the Asset Purchase agreement agreed to by the parties. The relief requested by the petition seeks to merely enjoin ISCP from using the disputed funds. Eagle Bank and Eagle Mortgage have established the second element necessary to obtain an injunction.

## III. *The injunction merely preserves the status-quo.*

"The purpose of a preliminary injunction is to preserve the status quo as it exists or previously existed before the acts complained of, thereby preventing irreparable injury or gross injustice."[13] In this case, enjoining ISCP from using the disputed funds preserves the status quo among the parties. Eagle Bank and Eagle Mortgage have established the third element necessary to obtain an injunction.

## IV. *Petitioners are likely to prevail on the merits.*

---

12. Asset Purchase agreement, Exhibit B to the petition for special and/or preliminary injunction, section 2.3(d).

13. *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1286 (Pa. 1992).

In the petition for special and/or preliminary injunction, Eagle Bank and Eagle Mortgage assert that ISCP assumed all of Eagle Mortgage's "ordinary and customary expenses incurred in connection with operation of the branch offices...[14]" Eagle Bank and Eagle Mortgage conclude that under this language, ISCP assumed the obligation to pay the branch offices with the funds held by ISCP in the reserve deposits.[15] ISCP denies it assumed the obligation to pay the branch offices, and asserts that the agreement specifically excludes from its assumed liabilities any obligation to pay the branch offices with funds held in the reserve deposits. ISCP cites a specific provision of the agreement in support of this argument. The specific section of the agreement states that "excluded liabilities" comprise "any amounts owed to any branch office or employee thereof...."[16] ISCP concludes that under this language, it has no obligation to pay the branch offices with funds held in the reserve deposits.

In Pennsylvania, "the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits."[17]

In this case, the pertinent provisions of the Asset

---

14. Plaintiffs' petition for special and/or injunctive relief, ¶ 13.

15. Plaintiffs' petition for special and/or preliminary injunction, ¶¶ 14, 19, 22.

16. Defendants' Memorandum of Law in Opposition to plaintiffs' petition for special and/or preliminary injunction, p. 5.

17. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mt., Inc.*, 828 A.2d 995, 1001 (Pa. 2003).

Purchase agreement state:

Section 2.3 Assumption of Liabilities.

...the Purchaser shall assume, effective as of the Closing, the following liabilities of the Sellers (collectively, the "Assumed Liabilities"):

\*\*\*

(d) ... all of [Eagle Mortgage's] ordinary and customary operating expenses incurred in connection with operation of the branch offices....

\*\*\*

section 2.3(A)

Excluded Liabilities. No Purchaser shall assume or be liable for any excluded liabilities.... "Excluded Liabilities" shall mean all liabilities of a seller other than the Assumed Liabilities, including:

\*\*\*

(k) ... any amounts owed to any branch office or any employee thereof....[18]

These provisions state that ISCP assumed Eagle Mortgage's obligations toward the branch offices. Although the provisions also state that ISCP is not liable for "any amounts ... owed to any branch office or any

_____

18. Asset Purchase agreement, sections 2.3(d), 2.3(A)(k), Exhibit B to the plaintiffs' petition for special and/or preliminary injunction (emphasis supplied).

employee thereof," the all-encompassing obligation "to assume all of [Eagle Mortgage's] ordinary and customary operating expenses incurred in connection with operation of the branch offices" is clearly and unambiguously stated in section 2.3(d) of the agreement.[19] The language excluding from the liabilities of ISCP "any amounts owed to any branch office or any employee thereof," contained in section 2.3(A)(k), applies only to amounts owed to any branch "other than the Assumed Liabilities" of ISCP. Pursuant to the agreement. Petitioners are likely to prevail on the merits. Eagle Bank and Eagle Mortgage have established the fourth element necessary to obtain an injunction.

### V. *The injunction is reasonably suited to abate the offending activity and will not harm the public interest.*

The petition for special and/or preliminary injunction seeks to enjoin ISCP from using expending or transferring any of the funds held in the reserve deposits, other than for payment to the former Eagle Bank and Eagle Mortgage branch offices. The injunction is reasonably suited to abate dissipation of the funds held in reserve. No harm to the public can arise out of such an injunction. Eagle Bank and Eagle Mortgage have established all the elements required to obtain an injunction which is contemporaneously entered.

---

19. "The task of interpreting a contract is generally performed by a court rather than by a jury."' *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563. 566 (Pa. 1983).