J-S25034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RUSSELL CERSOSIMO, JR. AND RUSSELL CERSOSIMO, SR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEYSTONE GROUP OF COMPANIES, LLC, KEYSTONE INTEGRATED CARE, LLC, AND THOMAS PERKO | : | |
| | : | |
| | : | |
| APPEAL OF: KEYSTONE GROUP OF COMPANIES AND THOMAS PERKO | : | No. 1093 WDA 2021 |

Appeal from the Order Entered August 10, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-20-008252

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: NOVEMBER 01, 2022**

Appellants, Keystone Group of Companies ("KGOC") and Thomas Perko ("Perko"), appeal from the order entered in the Allegheny County Court of Common Pleas that granted the motion of Appellees, Russell Cersosimo, Jr. ("Russ Jr.") and Russell Cersosimo, Sr. ("Russ, Sr."), seeking a special injunction against KGOC and Perko, and imposing a constructive trust over funds received from Appellant Keystone Integrated Care, LLC ("KIC"). We affirm.

In its opinion, the trial court set forth the factual and procedural history in this case as follows:

In late September and early October 2016, [Russ Jr.] and

[Perko] founded [KIC and KGOC]. (Amended Complaint, filed 1/6/21, at 3). KIC's sole member when founded was KGOC. KGOC's sole member when founded was Frequency Management, LLC, a limited liability company owned equally by Russ Jr. and Perko. (*Id.*) Pursuant to the operating agreement, KIC began as a manager-managed limited liability company, with a two-member board of managers, and Russ Jr. and Perko acting as managers. (*Id.*) Russ Jr. and Perko founded KIC with the goal of KIC becoming a medical marijuana organization holding a dispensary permit and grower permit. In exchange for a $1.35 million capital infusion, KGOC ceded 27% of its ownership interest in KIC to the Series A investors. The two leaders of the Series A investor group were … Dr. J. William Bookwalter, III ("Bookwalter"), and Mr. Steven D'Achille ("D'Achille"). (*Id.*) On or about January 23, 2017, KIC adopted a Second Amended and Restated Operating Agreement. The Second Amended and Restated Operating Agreement continued to list Russ Jr. and Perko as the Managers of KIC and was approved in writing by Bookwalter and D'Achille. (*Id.* at 6). On or about March 24, 2017, KIC submitted its permit applications to the Pennsylvania Department of Health ("Pa. DOH"). (*Id.* at 7).

Approximately seven years earlier, Russ Jr. had been charged with driving under the influence (DUI), Russ Jr. entered into the accelerated rehabilitative disposition program ("ARD"). Successful completion of ARD avoids a criminal conviction. However, the ARD remained a matter of public record and had not yet been expunged, even though Russ Jr. qualified for expungement. (*Id.*) It was discovered that certain key personnel associated with the applicant, KIC, would have to undergo criminal background checks. (*Id.* at 8). Permit applications were being evaluated and ranked by the Pa. DOH on a point system. Russ Jr.'s indirect ownership of KIC, through KGOC created a remote risk that could negatively impact the scoring of KIC's permit applications. Russ Jr. decided to relinquish any direct or indirect membership interest in KGOC until such time as the Pa. DOH ruled on KIC's permit applications. (*Id.* at 9). Russ Jr. notified Bookwalter and D'Achille that he was temporarily stepping aside and would return at a later date once the issue was resolved. *Id.* Appellants contest that Bookwalter and D'Achille were notified that Russ Jr.'s

relinquishment was temporary. (Answer and New Matter to Amended Complaint, filed 6/25/21, at 5). Appellees alleged that Perko and Russ Jr. agreed that, should the Pa. DOH grant KIC's permit application, Perko would return Russ Jr's half ownership interest in KGOC back to Russ Jr. (Amended Complaint at 10). Appellants deny that Perko agreed to relinquish half of his ownership back to Russ Jr. (Answer and New Matter at 5).

On June 16, 2017, Russ Jr.'s DUI was expunged, and a criminal records check showed no criminal record for Russ Jr. (Amended Complaint at 11). On or about June 29, 2017, the Pa. DOH granted KIC's dispensary permit application and awarded KIC a permit to own and operate three medical cannabis dispensaries in Western Pennsylvania, specifically in Greensburg, the Lawrenceville neighborhood of Pittsburgh, and Cranberry Township. (*Id.*)

Appellees allege that on August 18, 2018, Russ Jr., Perko, and KGOC had executed an Agreement to Assign Membership Interests ("Assignment Agreement"), to formally reestablish Russ Jr.'s equity in KGOC. (*Id.* at 18). Appellants deny that the Assignment Agreement was a binding contract. (Answer and New Matter at 8). The Assignment Agreement also made the assignment of a 50% interest in KGOC to Russ Jr. contingent upon confirmation from the Commonwealth of Pennsylvania that such an ownership change within one of KIC's members will not jeopardize or otherwise impair KIC's permit. (Amended Complaint at 18). The Assignment Agreement further states if the Pa. DOH does not approve Russ Jr. as an affiliated person, then Perko would assign Russ Jr.'s 50% interest in KGOC to [Russ Sr.]. (*Id.*) Despite repeated demands, KIC has refused to submit to the Pa. DOH the form necessary to identify Russ Jr. as an individual affiliated with KIC. (*Id.* at 19). Appellees allege that Bookwalter and D'Achille directed the preparation of a purported Third Amended and Restated Operating Agreement of KIC, with a purported effective date of April 30, 2019. Appellees allege that the purported Third Amended and Restated Operating Agreement was never approved by Perko, KGOC, or at a lawfully constituted meeting of the board of managers of KIC. (*Id.*) Appellees deny that the purported Third Amended and Restated Operating Agreement recites that on August 26, 2018, the

Members of KIC had voted on certain amendments to the Second Amended and Restated Operating Agreement and voted to amend and restate the Second Amended and Restated Operating Agreement in its entirety. (*Id.*) Section 7.01 of the purported Third Amended and Restated Operating Agreement purports to prohibit an entity owning a membership interest in KIC from changing its ownership or governance structure. Appellees allege that this was an attempt to prevent Perko and KGOC from restoring any KGOC membership interests to Russ Jr. or Russ Sr. (*Id.* at 20).

By a letter dated September 20, 2019, Bookwalter, on behalf of KIC, notified Perko that KIC was dissociating KGOC ("the Dissociation Letter"). The Dissociation Letter states that the dissociation was occurring pursuant to § 8861 of the Pennsylvania Limited Liability Company Act and the purported Third Amended and Restated Operating Agreement of KIC. (*Id.* at 21). The Dissociation Letter asserts that the Act permits removal of the member where the company's operating agreement would so require, and that KGOC engaged in wrongful acts constituting two separate events triggering dissociation under the Third Amended and Restated Operating Agreement. The first alleged act is that Perko used KIC funds to submit to the Pa. DOH an application for a medical marijuana grower permit without disclosing to the Pa. DOH that KIC and its investors were affiliated with the entity that filed the application. (*Id.*) Appellees deny this act. The second alleged act is that KGOC's agreement with Russ Jr. to transfer a 50% interest in KGOC to him was never disclosed to the members of KIC or the Pa. DOH. (*Id.* at 22). Appellees claim that the agreement was disclosed to the members of KIC. Despite repeated demand by KGOC from the date of the Dissociation Letter to the present, KIC has not paid KGOC fair value for its membership interest and has frozen out KGOC of all matters related to KIC. (*Id.* at 23).

(Trial Court Opinion, filed 3/24/22, at 2-6). Procedurally:

On August 31, 2020, [Russ Jr. and Russ Sr.] filed their complaint against [KGOC, KIC, and Perko]. The complaint contains Five (5) counts. Count I: Breach of Contract against KGOC and Perko. (Amended Complaint at 23).

- 4 -

Count II: Interference with Contractual Relations against KIC. (*Id.* at 25). Count III: Pennsylvania Uniform Voidable Transactions Act (PUVTA) against all Appellants. (*Id.* at 26). Count IV: Declaratory Judgment against all Appellants. (*Id.* at 29). Count V: Unjust Enrichment Russ Jr. against all Appellants. (*Id.* at 30). On August 6, 2021, Appellees filed a Motion for Special Relief. The Motion was for a special injunction against Appellants KGOC and Perko to impose a constructive trust over funds received from … KIC.[1] On August 10, 2021, after argument and an evidentia[ry] hearing, th[e c]ourt granted Appellees' motion for a special injunction. On August 19, 2021, Appellants filed a Motion for Reconsideration which was denied on September 9, 2021. On the same date Appellants appealed to the Superior Court of Pennsylvania concerning the Order entered on August 10, 2021. On December 9, 2021, [the c]ourt ordered Appellants to file a concise statement of errors complained of on appeal within twenty-one (21) days of the order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellants timely filed their 1925(b) statement on December 23, 2021.

(*Id.* at 1-2) (some record citations omitted).

Appellants raise the following issues on appeal:

Whether the Trial Court erred in granting [Appellees'] Motion for Special Injunction Against [Appellants KGOC and Perko] to Impose Constructive Trust Funds Received from [KIC] requiring that any funds or proceeds received be deposited into a court-supervised escrow account, when the record developed failed to satisfy all, if any, of the standards required for the imposition of an injunction.

1. Did the Trial Court err in its determination that Appellees would be subject to immediate and irreparable harm if the requested preliminary injunction were not granted when there was insufficient concrete evidence on the record

_____

[1] In a separate case, Perko and KGOC entered into a settlement agreement with KIC which provided for more than $3 million to be paid from KIC to Perko/KGOC. (Motion for Special Injunction, filed 8/6/21, at 3).

- 5 -

supporting establishing the speculative claim that Appellants might hypothetically dissipate assets in the absence of an injunction imposing a constructive trust?

2. Did the Trial Court err in its determination that Appellees could not be adequately compensated by an award of damages in the absence of an injunction?

3. Did the Trial Court err by granting the injunction, causing substantial harm and greater injury to Perko/KGOC by preventing them from using those funds for ongoing and productive business and personal matters than it would have caused to Appellees by denying the injunction?

4. Did the Trial Court err in its determination that Appellees' right to relief is clear and Appellees are likely to prevail on the merits of the underlying matter when there are multiple legal insufficiencies in Appellees' case as set forth in their Amended Complaint?

5. Did the Trial Court err in ordering an injunction that applies to the entire amount of the settlement funds received by Perko/KGOC from KIC rather than half, corresponding to the 50% ownership in KGOC claimed by Appellees?

(Appellants' Brief at 5-6).

Appellants challenge the trial court's grant of a preliminary injunction, which we review for an abuse of discretion. *Morgan Trailer Mft. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 932 (Pa.Super. 2000).

> [I]n reviewing preliminary injunction orders, "an appellate court is to conduct a searching inquiry of the record. Accordingly, … the scope of review in preliminary injunction matters is plenary." *Warehime v. Warehime*, 580 Pa. 201, 209 n.7, 860 A.2d 41, 46 n.7 (2004). With regard to the standard of review, appellate review of a trial court's order granting or denying preliminary injunctive relief is

"highly deferential." ***Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.***, 573 Pa. 637, 646, 828 A.2d 995, 1000 (2003).

***Hendricks v. Hendricks***, 175 A.3d 323, 329-30 (Pa.Super. 2017) (footnote omitted).[2]

Under this "highly deferential" standard of review, this Court must "examine the record to determine if there were any apparently reasonable grounds" for granting the preliminary injunction. ***Duquesne Light Co. v. Longue Vue Club***, 63 A.3d 270, 275 (Pa.Super. 2013). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." ***Summit Towne Centre, Inc., supra*** at 645-46, 828 A.2d at 1000 (citation omitted; brackets in original).

A court has apparently reasonable grounds to support the issuance of a preliminary injunction where it finds that the party seeking the injunction established the following six essential elements:

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it

---

[2] "Because of the many similarities between preliminary and special injunctions, the two types tend to merge into one and the words are used interchangeably." ***Id.*** at 329 n.9 (citation omitted).

seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest.

*Hendricks, supra* at 330 (quoting *Warehime, supra* at 209-10, 860 A.2d at 46–47).

Appellants' first two issues concern the first element; therefore, we discuss them together. First, Appellants claim that the court erred in finding that Appellees would be subject to immediate and irreparable harm if the injunction were not granted. Appellants claim that Appellees' assertion, that they would be subject to irreparable harm because the funds were at risk of dissipation, does not amount to concrete evidence of actual damage. (Appellants' Brief at 18-21). Second, Appellants argue that Appellees failed to show that they could not be adequately compensated by an award of damages if they did suffer irreparable harm. Appellants insists this case is about money damages and their remedy will be a monetary judgment if they are successful. (*Id.* at 25-26). We disagree.

This Court has affirmed the grant of a preliminary injunction to prevent the dissipation of assets in anticipation of litigation, concluding that an injunction is necessary to prevent immediate and irreparable harm. *See Ambrogi v. Reber*, 932 A.2d 969, 975 (Pa.Super. 2007), *appeal denied*, 597 Pa. 725, 952 A.2d 673 (2008) (holding that Pennsylvania law does not preclude trial court from granting preliminary injunction to prevent dissipation

of assets); ***Citizens Bank of Pennsylvania v. Myers***, 872 A.2d 827, 836

(Pa.Super. 2005) (listing cases).

Instantly, the trial court found:

> … Appellees have produced sufficient evidence to show that they would suffer immediate and irreparable harm if the preliminary injunction was not granted. The facts, in this case, have allowed [the trial court] to infer that absent an injunction creating a constructive fund, Appellants would likely dissipate their assets rendering them "judgment proof". Dissipation of assets by the Appellants would cause Appellees to suffer immediate and irreparable harm as Appellees would have no avenue to collect damages if they a judgment was made in their favor.

(Trial Court Opinion at 7). The court further explained:

> Although Appellants are correct in claiming that this matter is about money, Appellants are mistaken in claiming Appellees would be able to be compensated by an award of damages in the absence of an injunction. In the case of ***Citizens Bank of Pennsylvania v. Myers***, the court held a preliminary injunction preventing the dissipation of assets was proper where the defendants did not provide evidence of another way to pay the Plaintiff's award of damages. ***Citizens Bank of Pennsylvania,*** [***supra***] at 836. In the present case, Appellants have admitted KGOC does not have any assets in addition to the proceeds of the settlement agreement. Appellants have not offered evidence of an alternate means of paying Appellees if Appellees are successful in this matter. Absent the proceeds of the settlement agreement, Appellants do not have the means to pay damages to the Appellees if damages are awarded. Therefore, although this case is about money, there is no money besides the proceeds of the settlement agreement. Thus, Appellees cannot be adequately compensated by an award of damages absent this injunction.

(***Id.*** at 8-9) (record citation omitted).

On this record, we see no abuse of discretion concerning the court's

determination that Appellees would suffer immediate and irreparable harm if Appellants dissipated their assets, resulting in no avenue for Appellees to recover any damages awarded in the instant underlying lawsuit. Appellants admitted that they had no other funds with which to pay a judgment; therefore, without the injunction Appellees would be incapable of being fully compensated by money damages. Therefore, the record supports the court's order granting the special injunction and imposing a constructive trust to prevent Appellants from using the money received from the settlement. **See Morgan Trailer Mft. Co., supra**. Appellants' first and second issues merit no relief.

In their third issue, Appellants assert that the court failed to recognize that the injunction will cause greater injury to Appellants by preventing them from using the funds, than it would cause to Appellees by denying the injunction. Specifically, Appellants claim the injunction causes significant disruption to their business interest, completely stopping their ability to engage in any business activities or investments. (Appellants' Brief at 27-28). We disagree.

The second element for a preliminary injunction requires the court to weigh the harm an injunction would cause each party. In issuing a preliminary injunction, the court must consider whether "greater injury would result from refusing an injunction than from granting it." **Warehime, supra** at 210, 860 A.2d at 46.

Instantly, the trial court explained its reasoning as follows:

> [T]he order allows future payments to be made from the constructive trust by either written consent of the parties or by order of this court. Being specially crafted in this way, the order places the least possible burden on Appellants. In contrast, Appellees would suffer substantial harm if the injunction was denied. As stated previously, absent the injunction, this [c]ourt believes Appellants will dissipate funds in an attempt to become "judgment proof," leaving Appellees with no means of recovery. This injunction is carefully crafted to take into account the interest of both parties. Similar to the case of **Ambrogi v. Reber**, this specific injunction is the only way to protect Appellees' right to collect a judgment while allowing Appellants to fulfill their monetary obligations. **See Ambrogi**[**, supra** at] 977-78. Appellees will suffer greater harm by having no means of recovery than Appellants will suffer by not being able to use the frozen funds beyond the obligations provided for in the injunction. Thus, the [t]rial [c]ourt did not err in granting the injunction as the injunction will not cause Appellants greater injury than it would cause Appellees by denying the injunction.

(Trial Court Opinion at 10) (record citation omitted).

Here, the record is clear that the trial court considered the harm that would be suffered by both parties and crafted the injunction to mitigate this harm to the extent possible. On this record, we see no abuse of discretion in the court's order. **See Morgan Trailer Mft. Co., supra**. Appellants' third issue is meritless.

In their fourth issue, Appellants argue that Appellees failed to establish that they are likely to prevail on the merits of their underlying claims. (Appellants' Brief at 30). Specifically, they contend that Appellees' right to relief is not clear because there are multiple legal insufficiencies in Appellees'

case. Appellants insist the alleged agreement between the parties was invalid because it lacked consideration, and there was an unsatisfied condition precedent barring Appellees from succeeding on the merits of their claim. (*Id.* at 33-37). Appellants assert that Appellees cannot establish a clear right to relief, and the trial court erred in issuing the preliminary injunction. We disagree.

Our Supreme Court has stated, "[t]o establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but **need only demonstrate that substantial legal questions must be resolved** to determine the rights of the parties." *SEIU Healthcare Pennsylvania v. Com.*, 628 Pa. 573, 591, 104 A.3d 495, 506 (2014) (emphasis added). This Court has also observed that "[f]or a right to be 'clear,' it must be more than merely 'viable' or 'plausible.' However, this requirement is not the equivalent of stating that no factual disputes exist between the parties." *Ambrogi, supra* at 980 (citations omitted). Thus,

> [w]e do not attempt to determine whether the party seeking the preliminary injunction is guaranteed to prevail because our review of a decision regarding a preliminary injunction does not reach the merits of the controversy. **The proper question is whether the party seeking the preliminary injunction produced sufficient evidence to show that substantial legal questions must be resolved to determine the rights of the respective parties**.

*Id.* (citations and internal quotation marks omitted; emphasis added).

Here, the trial court reasoned:

> Appellants argue Appellees are not likely to prevail on the

- 12 -

merits due to three legal insufficiencies in Appellees' case. First, Appellants claim the contract between Perko/KGOC and Russ Jr., the Assignment Agreement, is unenforceable due to lack of consideration, while Appellees claim the Assignment Agreement is a binding contract. Second, Appellants claim the contract is unenforceable due to the condition precedent, that an affiliated individual report must be filed with the Department of Health, was not satisfied. Appellees claim KIC was at fault for refusing to submit the report. (Amended Complaint at 19). Third, that Appellees did not show that Perko/KGOC has been unjustly enriched. … The issues raised by Appellants are substantial legal questions concerning the validity of the Assignment Agreement. Appellees contest these issues, if they did not, this matter would not be before the court. Therefore, the Appellees have met their burden with this element of the injunction and thus, there was no error in granting the injunction.

(Trial Court Opinion at 10-11) (some record citations omitted).

We agree with the trial court that there are substantial legal questions to be resolved concerning the validity of the Assignment Agreement. **See SEIU Healthcare, supra**; **Ambrogi, supra**. Despite Appellants' assertion to the contrary, Appellees were not required to prove the merits of their claims; rather they were only required to produce "sufficient evidence to show that substantial legal questions must be resolved to determine the rights of the respective parties." **Id.** at 980 (citation omitted). The trial court found that Appellees met this burden, and we see no abuse of discretion here. **See Morgan Trailer Mft. Co., supra**. Appellants' fourth claim of error is meritless.

In their last issue, Appellants claim the court erred in granting the preliminary injunction because it does not restore the parties to their status

immediately prior to the alleged wrongful conduct. Appellants assert that the injunction is broader than needed, and only half of the settlement proceeds should be placed into the escrow account because Russ Jr. alleges that he is entitled to half of KGOC. (Appellants' Brief at 41-43). We disagree.

The final prerequisite for the grant of a preliminary injunction is proof that the injunction would restore the status quo among the parties. "The status quo to be maintained by a preliminary injunction is the last actual, peaceable and lawful non-contested status which preceded the pending controversy." *Allegheny Anesthesiology Assocs., Inc. v. Allegheny Gen. Hosp.*, 826 A.2d 886, 894 (Pa.Super. 2003), *appeal denied*, 577 Pa. 684, 844 A.2d 550 (2004) (citation omitted). Thus, "[t]he relevant standard requires that an injunction must address the status quo as it existed between the parties before the event that gave rise to the lawsuit, not to the situation as it existed after the alleged wrongful act but before entry of the injunction." *Ambrogi, supra* at 979 (citation omitted).

Here, the trial court reasoned:

> Appellants assert if Appellees are successful in this matter that Russ Jr. is entitled to only 50% of the proceeds from the Settlement Agreement because Russ Jr. was 50% owner of KGOC before returning his interest to Perko and the Assignment Agreement stated Perko would give the 50% interest back to Russ Jr. The purpose of this injunction is to secure a means by which Appellees can collect a judgment if they prevail on the merits of the case. Appellees claim that if successful in this matter the damages will exceed 50% of the funds received by Perko/KGOC from KIC. Therefore, an injunction creating a constructive trust with only 50% of the proceeds received by Perko/KGOC from KIC

would not allow for Appellees to fully recover if damages are rewarded.

(Trial Court Opinion at 11) (record citation omitted).

We conclude that the trial court did not abuse its discretion in requiring that Appellants preserve the settlement assets in full in order to satisfy any judgment that might be entered in this case and to preserve the status quo. Appellees' amended complaint sought various damages against Appellants including, *inter alia*, damages for breach of contract, claims under the Pennsylvania Uniform Voidable Transactions Act, and unjust enrichment. (Amended Complaint at 23-31). In the underlying lawsuit, Appellees claim they have been wrongfully deprived of their entire interest in KGOC and KIC. Thus, Appellees' potential recovery is not limited to half of the proceeds of the Settlement Agreement; rather, preservation of those assets merely provides Appellees with an avenue of recovery should they prevail on the merits. Accordingly, the trial court had apparently reasonable grounds to issue the preliminary injunction. ***Duquesne Light Co., supra***; ***Summit Towne Centre, Inc., supra***. Therefore, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/01/2022