# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Duquesne | : | |
| | : | |
| | : | |
| v. | : | No. 1550 C.D. 2018 |
| | : | Argued: May 8, 2019 |
| Redevelopment Authority of | : | |
| The City of Duquesne, Duquesne | : | |
| Business Advisory Corporation | : | |
| | : | |
| Appeal of: Duquesne Business | : | |
| Advisory Corporation | : | |


BEFORE:     **HONORABLE MARY HANNAH LEAVITT,** President Judge
                    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                    **HONORABLE ROBERT SIMPSON,** Judge
                    **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                    **HONORABLE ANNE E. COVEY,** Judge
                    **HONORABLE MICHAEL H. WOJCIK,** Judge
                    **HONORABLE CHRISTINE FIZZANO CANNON,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                  **FILED: July 8, 2019**


      Duquesne Business Advisory Corporation (DBAC) appeals from an Order of the Court of Common Pleas of Allegheny County (common pleas) freezing $1,363,799.11 in Revolving Loan Fund (Fund) monies the Redevelopment Authority of the City of Duquesne (Authority) previously transferred to DBAC, ordering DBAC not to disburse the monies pending outcome of the present litigation, and requiring DBAC to file an affidavit with the name and address of the financial

institution where the Fund is being held.  Before common pleas was the City of Duquesne's (City) Motion for a Preliminary Injunction (Motion), which common pleas denied in the Order.  DBAC argues that, having determined that the City was not entitled to injunctive relief, it was error for common pleas to enter an Order that essentially granted that injunctive relief.  We agree and, therefore, reverse that part of common pleas' Order challenged by DBAC.

The Authority, an agency created by the City under the Urban Redevelopment Law (Law)[1] and located in the City, seeks to provide economic and social redevelopment for properties in the City.  (Complaint (Compl.) ¶¶ 5-6.)  The Authority distributed loans from the Fund to foster such economic development.  Businesses engaging in redevelopment projects could apply for a loan from the Fund, and the Authority's executive board would approve loan applications on a case-by-case basis.  According to the Complaint, the Authority's executive board includes four members, all of whom are appointed by the City's mayor.  (*Id.* ¶¶ 12, 23.)  By resolution dated December 31, 2017, two days prior to the installation of a newly elected mayor for the City, the Authority transferred $1,363,799.11, the amount then in the Fund, to DBAC.  (*Id.* ¶ 20.)

DBAC, a private nonprofit corporation, exists "to revitalize the community" and also foster economic development.  (*Id.* ¶ 8.)  DBAC works as a partner with the City, the Authority, the cities of McKeesport and Clairton, and other nonprofits to improve the City and its surrounding areas.  (Compl. Ex. C.)  The application for and distribution of the Fund remains the same under DBAC's authority; however, the City's mayor will not have the power to appoint members to DBAC's Board, and the City will not have oversight of the disbursement of the Fund.  (Compl. ¶ 22.)

---

[1] Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701-1719.2.

The City filed a Complaint with common pleas on March 2, 2018, seeking declaratory judgment under the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531–7541. The City asserted that the Authority's transfer of the Fund to a private corporation violated the Law, exceeded the Authority's express and implied power under the Law, constituted an unlawful dissolution of the Authority under the Law, and was contrary to the legislative intent underlying the Law. (Compl. ¶¶ 33-34, 36-37, 40, 43, 47-48.) The City sought an order rescinding the resolution and directing the return of the Fund to the Authority. (Compl., Wherefore Clauses.)

DBAC filed Preliminary Objections in the nature of demurrers, asserting that the City lacked standing and had failed to state a claim for relief under the Law.[2] The Authority filed its own Preliminary Objections asserting the same objections.[3] In the interim, the City filed its Motion seeking a preliminary injunction. The City asserted that injunctive relief was necessary because DBAC, a private corporation, would be in possession of and distributing money from the Fund, without any City involvement or oversight, and the City would have no recourse to obtain the return of that money if it ultimately prevailed in the litigation. (Motion ¶¶ 11, 21.) Common pleas held an argument and hearing on the Preliminary Objections and the

---

[2] DBAC asserted other grounds in its preliminary objections including non-justiciability, failure of the Complaint to conform to law, and a motion to strike paragraph 11 of the Complaint for scandalous or impertinent materials.

[3] In their respective Preliminary Objections, DBAC and the Authority also raised objections that the Complaint did not conform to the Pennsylvania Rule of Civil Procedure 1024, Pa.R.C.P. No. 1024, because it lacked a verification, and that paragraph 11 of the Complaint should be struck as scandalous and impertinent material pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2), Pa.R.C.P. No. 1028(a)(2).

Motion on May 29, 2018, after which it denied the Preliminary Objections and continued the hearing on the Motion.[4]

The hearing on the Motion was held on August 2, 2018, at which only one witness testified. The City called on cross a consultant (Consultant) under contract at DBAC, who testified as follows. Consultant was employed by the Authority until December 2017, around the time when the Fund was transferred to DBAC. (Aug. 2, 2018, Hr'g. Tr. at 6-7.) The Authority and DBAC have a long history. At the development of a state Enterprise Zone program for distressed communities in the 1980s, the first revolving loan fund was initiated by the McKeesport Development Corporation. As time went on, **five separate revolving loan funds** came into existence and were administered by: the Redevelopment Authority of McKeesport, the Clairton Reinvestment Corporation, the McKeesport Development Corporation, DBAC, and the Authority. (*Id.* at 12-13.) Around 2013, these separate funds were consolidated into one, the Fund currently at issue, which would be administered by the Authority for the benefit of the City, McKeesport, and Clairton. (*Id.* at 14.) The purpose of transferring the Fund to DBAC in 2017 was to ensure representation from all three cities on the loan committee. DBAC's bylaws provide that there be equal representation from each community on the loan committee. (*Id.* at 37.) While the transfer of the Fund was effective on December 31, 2017, DBAC and the Authority first initiated the plan to transfer the Fund in September 2017, and began the process of assigning the loans and transferring money sometime in November 2017. (*Id.* at

---

[4] DBAC reasserts, in the current appeal, that the City lacks standing. Because of our disposition, we do not reach the issue of standing. However, we observe that an order overruling preliminary objections and directing a party to file an answer is interlocutory and unappealable. *Dep't of Transp. v. Lakeview Motel, Inc.*, 473 A.2d 262, 263 (Pa. Cmwlth. 1984). To the extent that DBAC challenges common pleas' prior decision overruling its preliminary objection on standing, that issue is not properly before us in this limited appeal.

4

21-22, 51, 56.) At the time of the Fund transfer, the Authority had other ongoing programs it administered besides the Fund, including a tax increment financing program, and the Authority owned properties and discretionary funds for other activities. (*Id.* at 56-57.)

The Fund exists as a "gap financing program," where the entity administering the Fund provides approved for-profit business applicants with the funding needed to cover the percentage of a project that is not covered by a private bank loan. (*Id.* at 28.) The entity administering the Fund then has a second priority lien, and the for-profit business to which the money is lent must repay the loan. The purpose of this is to encourage economic development, including the creation of jobs, in areas where real estate values are low. (*Id.* at 28-29.) The money that the loan recipient repays, both principal and interest, is reinvested into the Fund to be loaned to another business. (*Id.* at 29.) All of the capital in the Fund was provided by the state and no city or redevelopment authority put its own money into the Fund. (*Id.* at 29-30.) Money in the Fund can only be administered to for-profit businesses, not charitable institutions or municipalities. (*Id.* at 34-35.) Thus, when the City's now-mayor emailed Consultant in August 2017, while Consultant worked for the Authority, inquiring about obtaining a loan for a local church, Consultant explained that state guidelines only allow Fund money to be lent to for-profit businesses; therefore, it could not issue a loan to a church. (*Id.* at 43-45.) Nonprofit entities are able to and often do administer revolving loan funds. (*Id.* at 35-36.) The current loan portfolio of the Fund at the time of the hearing was around $1.9 million, and DBAC was actively looking for qualified borrowers to which DBAC could lend money from the Fund. (*Id.* at 42.)

At the conclusion of Consultant's testimony, the City rested its case on the Motion "on [its] legal argument." (*Id.* at 63.) DBAC offered no other witnesses. DBAC argued that the City had not met through Consultant's testimony its burden of establishing the six requirements for obtaining a preliminary injunction.[5] The City rejoined that the legal arguments were in its favor and it believed it met its burden, noting that the Authority's funds were limited after the transfer of the Fund. The City also argued Consultant had testified that loans from the Fund could be provided only to for-profit businesses, not nonprofits; thus the transfer of the Fund from the Authority to DBAC was an unlawful transfer to a nonprofit. DBAC disagreed, arguing that while loans from the Fund could not be given to nonprofits, nonprofits could administer the Fund. Common pleas inquired whether DBAC was continuing to administer the Fund, and DBAC confirmed that it was actively looking for applicants to which it could loan Fund monies, although it had not yet issued a loan from the Fund, and the hearing concluded. (*Id.* at 71-72, 74.)

---

[5] A court may grant a preliminary injunction where the moving party establishes the following six elements:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking the injunction is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the injunction will not adversely affect the public interest.

*Lindeman v. Borough of Meyersdale*, 131 A.3d 145, 151 (Pa. Cmwlth. 2015).

Following the evidentiary hearing on the Motion and the parties' filings of proposed findings of fact and conclusions of law, common pleas issued its Order, dated October 22, 2018, which stated as follows:

1. [City]'s motion for preliminary injunction is denied.

2. The $1,363,799.11 in revolving loan funds previously transferred to [DBAC] by the [Authority] are frozen.

3. [DBAC] shall not commit, disburse[,] or move any of those funds or any earnings thereon pending the outcome of this litigation.

4. Within thirty (30) days of the date of this [O]rder, counsel for [DBAC] shall file with the Department of Court Records, serve on this court, and serve on opposing counsel an affidavit executed by an appropriate representative of [DBAC] as follows:

The affidavit shall indicate the name and address of the financial institution where the aforesaid money is held and the account number where the money is held.

(Order.)[6]  DBAC appealed[7] and filed a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), arguing that common pleas erred as a matter of law by freezing the Fund after correctly denying the City's Motion.

In response, common pleas issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), explaining that such relief was warranted under common pleas' powers in equity.  Citing *Williams Township Board of Supervisors v. Williams Township Emergency Company, Inc.*, 986 A.2d 914, 921 (Pa. Cmwlth. 2009), common pleas first noted that courts sitting in equity have broad

---

[6] DBAC timely filed an Affidavit sworn by Consultant that complied with the Order. (Original Record Item No. 29; R.R. at 316a-17a.)

[7] Although DBAC and the Authority proceeded separately in the proceedings below, the Authority did not appeal the Order but joins in DBAC's brief in the current appeal.

powers to grant relief. Because DBAC indicated its intent to disburse loans from the Fund throughout the litigation, common pleas was concerned that the Fund money would be dissipated before the legality of the transfer was determined. Specifically, common pleas found that "it would be irresponsible . . . to allow such a substantial amount of public money, all of which is intended to serve community residents, to be distributed by a private corporation which might or might not have the legal authority to make distributions." (Rule 1925(a) Opinion (Op.) at 4.) Given this, common pleas found it necessary to exercise its equitable powers to freeze the Fund "so as to prevent [its] dissipation until the time of what was intended to be a quick trial." (*Id.* (citing *Williams Twp.*, 986 A.2d at 921; *Citizens Bank of Pa. v. Myers*, 872 A.2d 827, 831 (Pa. Super. 2005); *Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996)).) Common pleas also noted that, upon DBAC's appeal of the Order, common pleas "lost jurisdiction" and cancelled the previously scheduled status conference. (*Id.* at 3.)

On appeal, DBAC first argues[8] that the City did not meet its burden for a preliminary injunction. While both the City and DBAC address whether the City satisfied all of the requirements for the imposition of a preliminary injunction, common pleas did not find that the City had satisfied the requirements, denying its Motion. Importantly, the City **did not appeal that denial**. Accordingly, we will not revisit and review common pleas' unappealed denial of the City's request for the imposition of a preliminary injunction. Thus, we examine the reasons proffered by common pleas to support its decision to freeze the Fund.

DBAC argues that common pleas' grant of equitable relief, which is almost identical to the requested preliminary injunction, was outside of common pleas'

---

[8] We have reordered DBAC's arguments for ease of discussion.

8

authority. DBAC asserts that the cases relied upon by common pleas to justify its broad use of equitable powers to issue this relief are distinguishable. DBAC disagrees with common pleas' determination that it would be irresponsible not to freeze the Fund due to the parties' competing arguments on the legality of the transfer. Common pleas' reasoning utilizes an incorrect standard, DBAC argues, and following this standard would allow courts to freeze funds after a mere allegation of wrongdoing. DBAC contends that this is inconsistent with precedent because it would allow injunctive relief to be issued without the moving party showing the necessary elements for such relief.

The City responds that common pleas had both the authority and reasonable grounds to issue the relief it did in the Order. As common pleas noted, the City reiterates that "[c]ourts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute." (City's Brief (Br.) at 21 (quoting *Williams Twp.*, 986 A.2d at 921).) The City asserts that common pleas had reasonable grounds to freeze the Fund, even though it denied the preliminary injunction, because DBAC made clear its intent to continue administering the Fund. The City argues that this public money should not be disbursed by a private corporation that may not have a legal right to the Fund. Emphasizing that appellate courts have a narrow and deferential review of the grant or denial of preliminary injunctions, the City asks this Court to affirm common pleas' Order because there are "apparently reasonable grounds for [common pleas'] Order." (*Id.* at 22 (citing *Hicks v. Am. Nat. Gas Co.*, 57 A. 55 (Pa. 1904)).)

In resolving these arguments, we first note that the deferential standard of review for the grant or denial of preliminary injunctions is not applicable here because the preliminary injunction was denied and that decision was not appealed.

9

Therefore, our review is not whether there are apparently reasonable grounds for the Order, but rather, whether common pleas committed an error of law or abused its discretion. *Porter Twp. Initiative v. E. Stroudsburg Area Sch. Dist.*, 44 A.3d 1201, 1208 n.8 (Pa. Cmwlth. 2012).

With this standard in mind, we turn to common pleas' explanation for its decision to freeze the Fund and enjoin DBAC from administering it, even though common pleas had denied the Motion for a preliminary injunction. Common pleas first relied upon this Court's decision in *Williams Township*, in which we reviewed a trial court's order denying permanent injunctive relief, granting one nonprofit's transfer of assets, vacating a preliminary injunction, and imposing a constructive trust. There, the township filed a complaint seeking injunctive relief after two nonprofit corporations providing ambulance services in the same area began the process of merging. *Williams Twp.*, 986 A.2d at 916. The township contended that it had contributed taxpayer money to one of the nonprofits and had sought detailed information from both nonprofits about their bylaws, finances, and plans for merger. The township asserted that if the nonprofit to which it had contributed funds should close, the money provided to it by the township should be returned to the township pursuant to the bylaws. *Id.* The township sought, and the trial court granted, a preliminary injunction freezing the nonprofit's assets and ordering inventories and audits. *Id.* at 917. After a non-jury trial, the trial court found that the nonprofit in question was not closing as a result of the merger and vacated the preliminary injunction, but nonetheless noted that a property located in the township and owned by the nonprofit was for the benefit of the township's residents. *Id.* at 918-19. Therefore, the trial court ordered a constructive trust in which the nonprofit held legal title to the property for the benefit of the township. *Id.* at 919.

10

The nonprofit appealed to this Court arguing, *inter alia*, that the trial court exceeded its authority in imposing a constructive trust, particularly because the relief requested in the township's preliminary injunction was different. We acknowledged that "[c]ourts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute." *Id.* at 921. However, we also noted that "a trial court must formulate an equitable remedy that is consistent with the relief requested;" thus, "while a chancellor in equity may fashion a remedy that is narrower than the relief requested, he or she may not grant relief that exceeds the relief requested." *Id.* Although we found the constructive trust was consistent with and no broader than the relief the township had requested, we continued our analysis to determine whether the trial court had the power to enter this relief. *Id.* Reviewing the prerequisites for creating a constructive trust, we concluded that the facts relied upon by the trial court to do so did not satisfy those prerequisites, and "the trial court abused its discretion in creating a constructive trust." *Id.* at 924.

While courts sitting in equity have broad power to fashion remedies, our decision in *Williams Township* explicitly disapproves the fashioning of an equitable remedy **where the prerequisites for that remedy have not been met**. We determined in *Williams Township* that even if a constructive trust was consistent with the equitable relief that the moving party sought, the trial court could not order that relief where the party has not met its burden for it. Thus, *Williams Township* is contrary to the proposition for which common pleas relied upon it and does not support common pleas' Order freezing the Fund and enjoining DBAC from administering the Fund where common pleas did not find the City met its burden of proof for a preliminary injunction.

11

Common pleas also relied upon *Citizens Bank* and *Elliott*, noting that these cases provided common pleas with the authority to freeze assets pending the resolution of litigated claims. In *Citizens Bank*, a bank filed a civil action against two former employees alleging they had misappropriated the bank customers' funds and stolen more than $1.3 million. 872 A.2d at 831.[9] The bank sought equitable relief and filed an emergency ex parte motion for a special injunction, seeking to freeze the defendants' bank accounts, which the trial court granted. *Id.* After the trial court refused to lift the injunction following a hearing, one defendant appealed, arguing that the trial court erred in granting the preliminary injunction because there was an adequate remedy at law for money damages. *Id.* at 835. Reviewing the prerequisites for a preliminary injunction, the Superior Court determined that there was no evidence as to whether the defendant had any assets to pay a money judgment if one was issued. *Id.* at 836. Rather, the record showed "that the account's assets had their genesis in theft" and "there [was] a reasonable likelihood that[,] absent an injunction, the assets will simply disappear or be dissipated." *Id.* Therefore, the Superior Court concluded that the bank had established irreparable harm that could not be compensated by money damages and affirmed. *Id.*

In *Elliott*, 98 F.3d at 50,[10] the underlying litigation related to a demand for an accounting of assets by two beneficiaries who alleged a breach of fiduciary duties, fraud, and unjust enrichment under the Pennsylvania Uniform Transfers to Minors Act.[11] A jury determined that the defendant had breached the defendant's fiduciary

---

[9] Although not binding on this Court, we may consider Superior Court decisions for their persuasive value. *A.S. v. Pa. State Police*, 87 A.3d 914, 919 n.9 (Pa. Cmwlth. 2014).

[10] Although decisions from the United States Court of Appeals for the Third Circuit are not binding on this Court, we may consider them for their persuasive value. *Kutnyak v. Dep't of Corr.*, 923 A.2d 1248, 1250 (Pa. Cmwlth. 2007).

[11] 20 Pa. C.S. §§ 5301–5321.

12

duties, and the defendant moved for a new trial. *Id.* at 51. Shortly thereafter, the beneficiaries moved for the trial court to freeze the defendant's assets and those of his wife under its equitable powers pursuant to Rule 65 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 65, governing the issuance of preliminary injunctions and temporary restraining orders. *Id.* at 52. The district court issued an order freezing the assets and enjoining the defendant from withdrawing, transferring, or disposing of the assets. *Id.* The defendant appealed, and the United States Court of Appeals for the Third Circuit affirmed the district court's order freezing the assets. Reviewing the elements and findings for irreparable harm and the respective parties' asserted hardships, the Third Circuit concluded there was factual support for the district court's decision to freeze the assets. *Id.* at 58-59. Because the beneficiaries ultimately sought return of a property interest in the assets in question, the Third Circuit, "emphasiz[ing] that this [was] an extraordinary case that demanded extraordinary measures," concluded that the district court had to "preserve what was left of the family assets." *Id.* at 58.[12]

Reviewing these cases, we agree with DBAC that common pleas' reliance upon *Citizens Bank* and *Elliott* is misplaced where, as here, the party seeking injunctive relief does not meet its burden of proving its entitlement to that relief. *Citizens Bank* and *Elliott* demonstrate that the freeze of assets is an appropriate remedy where injunctive relief is sought and the factual showings establish the necessary requirements for granting that relief. It is worth emphasizing that the

_____

[12] Common pleas also relied upon *Federal Trade Commission v. Home Assure, LLC*, an unreported opinion from the United States District Court for the Middle District of Florida. (M.D. Fla., No. 8:09-cv-547-T-23TBM, filed April 16, 2009). The district court's decision in that case related to a freeze of assets and that court's equitable powers under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). Section 13(b) provides broad power and different standards governing the issuance of injunctive relief in such circumstances; thus the district court's analysis in *Home Assure* is inapplicable to the present case.

orders being appealed in both *Citizens Bank* and *Elliott* were from a trial court's order **granting the injunctive relief** sought because the moving parties had met their burden of proof. Neither the Superior Court nor the Third Circuit held that a trial court can order the freezing of funds out of general powers of equity absent proving the necessary requirements for the equitable relief sought.

In denying the Motion, common pleas determined the City did not meet its burden for a preliminary injunction. Given this, common pleas could not *sua sponte* order equitable relief similar to that sought by the City in the denied Motion. The broad equitable powers a court may have to fashion relief do not extend so far as to allow the issuance of alternative injunctive relief where the burden of proof for such relief has not been met. While common pleas determined it would be irresponsible not to freeze the Fund, as the Fund could dissipate, Consultant explained that the Fund is a revolving loan fund. Thus, as Consultant stated, if and when DBAC makes a loan to an eligible for-profit business from the Fund, that business is required to pay that loan back with interest. DBAC **does not administer grants** from the Fund such that the money could be dissipated and disappear, as was the concern in *Citizens Bank*, but administers **loans**, a type of **investment,** not an expenditure. Loans made from the Fund during litigation will be paid back to the Fund with interest; the loans thus earn a return and thereby grow the Fund. Accordingly, absent the City satisfying its burden of proof for injunctive relief, common pleas did not have authority to issue the Order imposing alternative injunctive relief.

Because common pleas denied the Motion for a preliminary injunction, which was not appealed, and the grounds cited by common pleas for its authority to freeze the Fund do not support its decision, it was error to freeze the Fund and enjoin DBAC from administering loans from the Fund. Accordingly, we reverse common pleas'

14

Order to the extent that it froze the Fund and enjoined DBAC from administering the Fund pending litigation.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Duquesne | : |
| | : |
| | : |
| | : |
| v. | : No. 1550 C.D. 2018 |
| | : |
| Redevelopment Authority of | : |
| The City of Duquesne, Duquesne | : |
| Business Advisory Corporation | : |
| | : |
| Appeal of:  Duquesne Business | : |
| Advisory Corporation | : |

# **O R D E R**

**NOW**, July 8, 2019, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matter is **REVERSED** to the extent that the Order froze the Revolving Loan Fund (Fund) and enjoined the Duquesne Business Advisory Corporation from administering the Fund.

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Duquesne | : |
| | : No. 1550 C.D. 2018 |
| v. | : |
| | : Argued: May 8, 2019 |
| Redevelopment Authority of | : |
| The City of Duquesne, Duquesne | : |
| Business Advisory Corporation | : |
| | : |
| Appeal of: Duquesne Business | : |
| Advisory Corporation | : |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

***OPINION NOT REPORTED***

CONCURRING AND DISSENTING OPINION
BY JUDGE McCULLOUGH                                    FILED: July 8, 2019


I agree with the thoughtful Majority that a court lacks authority to grant equitable relief where the prerequisites for that remedy have not been met. Nevertheless, as this Court is, in part, an error correcting court, the common pleas court's decision serves as a critical basis for our appellate review and should provide the legal basis for its determination.

Here, however, the common pleas court did not provide the legal reasoning for its statement of denial of the preliminary injunction sought by the City

of Duquesne (City). In arguing that the City did not meet the standards for a preliminary injunction, Duquesne Advisory Business Corporation appears to treat the equitable relief granted by the common pleas court as a partial grant of the preliminary injunction. While the common pleas court denied the preliminary injunction sought by the City, it did not address the preliminary injunction standards and whether the City met the same. Thus, at this juncture, I would vacate the common pleas court opinion and remand to allow the common pleas court to provide its reasoning as to why the City did or did not meet the standards for a preliminary injunction and to clarify whether it intended the equitable relief it granted as a partial grant of the preliminary injunction sought by the City.

_____
PATRICIA A. McCULLOUGH, Judge